The intestate was killed by being thrown from a hand-car which he and other employes were propelling upon the defendant's road. The complaint alleged that the hand-car was unsafe and improperly constructed, and the proof showed that two or three weeks before the accident one of the handles to the walking beam was broken and that defendant's employes continued to use the car with the handle of a pick or an iron crowbar in the place of the broken handle, it being inserted in the socket by some of them without any direction from the section boss. The crowbar was about five and one-half feet in length, and when used as a handle one end projected four feet and the other one and one-half feet from the socket of the lever. On the day of the accident some of the workmen had inserted the crowbar in the place of the handle that was gone, and observing a train approaching them from behind on the *Page 278 
same track, instead of removing the hand-car to the other track as was usually done, they started to run it to a distant switch and thus escape the train. They worked the car with all the force they could, using five men on the crowbar instead of three, the usual number. Three of them including the intestate were on the long arm, one on the short arm and one in the centre. The working of the crowbar by the men in the manner in which it was done evidently wrenched the lever or beam by which the car was operated, so that it broke, throwing the intestate under the car and killing him. Prior to the accident the intestate had full knowledge of the defect in the hand-car and voluntarily continued in the employ of defendant without complaining of or objecting to it. By riding on the car and aiding, by the use of the crowbar, in propelling it along on the track, he assumed all risks of injury resulting from the use of the crowbar or from the negligence of his fellow-servants, without any regard whatever to the question whether the defendant knew of the defect or ought to have had knowledge of the same. (2 Thomp. on Neg. 1008 et seq.;Gibson v. Erie Railway Co., 63 N.Y. 453; De Forest v.Jewett, 88 id. 264.) The deceased was an employe on the road, and no doubt was possessed of the ordinary judgment and sense of those who occupied a similar position. He had sufficient knowledge to understand the ordinary rules which are applicable to the use of a car which was partially disabled, as was the case here. He must have known that the use of the crowbar required the usual care, and would not be as safe and secure as if a proper handle had been in use. He must also have known that the application of extraordinary force, under the circumstances, might perhaps cause the accident by wrenching the walking beam, as was done by such a use of the crowbar in this case. It did not require a special knowledge or skill to determine that an unusual application of force might result either in the breaking of the handle or the walking beam. Working on the car as he did, with ample knowledge in regard to its operation, and fully aware of its condition, there would seem to be no ground for claiming that there was any question of fact for *Page 279 
the consideration of the jury as to the intestate's knowledge of the risk he incurred in using the car and improperly using the crowbar in propelling the same.
There is a class of cases in the books in which it is held that the question arising as to the knowledge of an injured party in regard to defects in machinery or materials may be submitted to the jury, but these cases are all clearly distinguishable from the one at bar, where it is plainly apparent that knowledge must have existed as to the character of the implements or machinery employed and of the risks incident thereto, and that the injured party acted with an entire appreciation of the actual condition of the car on which he was riding, fully realized the state in which it was, and did not deem it essential to make any complaint, or give any notice to the defendant that he considered it unsafe or unfit for use. In the case of East Tenn., etc.,R.R. Co. v. Smith (9 Lea [Tenn.], 685) the accident occurred by reason of the breaking of a handle on a hand-car under circumstances similar, to those presented in the case at bar, and the question discussed was as to the defect in one of the wooden handles of the lever which was claimed to be too small for the purpose, and it was held by the court that the determination of such a matter required no special knowledge or scientific skill, and if with such knowledge the plaintiff elected to continue in the service, he should be regarded as voluntarily electing himself to take the risk.
This rule may be invoked with far greater reason in the case considered, where the simple question was, whether the car could be properly used in the manner it was after substituting a crowbar in the place of the handle.
We are referred to the remarks in the opinion in the case ofLaning v. N.Y.C.R.R. Co. (49 N.Y. 521), to the effect that if the servant remains in the service after a defect arises and complains of the same, it is for the jury to say whether or not he voluntarily assumed the risk of defective machinery whereof he has full and equal knowledge. The alleged defect in that case was the employment of unfit men, of which the person injured had knowledge and made complaint, and while *Page 280 
the rule stated may well apply to such a case, it cannot be regarded as pertinent to one where it is clear and unmistakable that the employe not only had knowledge but a full appreciation of the character of the instrumentalities with which he was working and made no complaint.
It is true that regard must be had to the limited knowledge of the employe as to the machinery and structure on which he is employed, and to his capacity and intelligence, and that the servant has a right to rely upon the master to protect him from danger and injury, and in selecting the agent from which it may arise (Connolly v. Poillon, 41 Barb. 366), but this rule should not be invoked where it is entirely apparent that the servant has an intelligent and clear comprehension of the nature of the risks to which he is subjected. Some other cases are cited by the respondents' counsel, but they are all distinguishable from the case at bar, and none of them hold that where the evidence clearly shows that the person injured had full knowledge of the defect and intelligently and completely appreciated its true character, there was any question of fact for the consideration of the jury.
It is apparent, we think, under the facts presented that the intestate, with full knowledge of the defects in the car, assumed the responsibility of working on the same and the risks arising therefrom, and that no liability was incurred by the defendant by reason of the accident which caused his death. There is far stronger reason here for relieving the defendant from liability. Where the defect did not exist originally, and when the servant upon discovering it failed to perform his duty in notifying the master, than under ordinary circumstances. By his neglect of duty in this respect he was chargeable with contributory negligence, which prevents his recovery of damages on account of being injured by reason of the use of the defective hand-car.
We are also of the opinion that the action cannot be maintained for the additional reason that the deceased was chargeable with contributory negligence in the use of the hand-car by himself and his fellow-servants, in the manner in which it was propelled at the time of the accident. It was clearly negligence *Page 281 
to seek to avoid the train in the manner they did. The deceased participated with his fellow-servants in this act and was responsible for the consequences which followed.
There was no question of fact for the jury upon the trial, and for the reasons stated, the motion for a nonsuit was properly granted and the General Term erred in reversing the judgment.
The order of the General Term should be reversed and judgment entered on the order nonsuiting plaintiff at Circuit.
All concur.
Order reversed and judgment accordingly.