Bradley J.
The plaintiff’s intestate had for some time been employed in the defendant’s yard, and was one of a gang of men working with a switch engine, and consisting of an engineer, fireman, an assistant yard-master and three switchmen. The deceased was one of the latter, and his business was to direct the movement of the engine with cars attached for distribution, and uncouple the cars that they might respectively be placed where wanted. He went with the train, had the charge of cutting off the cars, gave the signals for the movement of the engine forward and backward, and the signals for it to stop. On the night of March 12, 1884, a line of attached cars were being detached and thrown from the main track on to another track or tracks in the yard. He signalled the engineer to kick back the car he was about to uncouple from the rest, and went in between the cars to draw the'coupling pin, and in doing so caught his foot in the frog, and, as his signal required, the engine proceeded to back up, and he was run over and killed. This was one of many frogs in the yard of the same character and condition. After his foot was caught in it there was no way for him to get it out, except in the direction opposite that in which the engine and cars were moving; and that he could not do, because they were coming and were upon him.
The alleged negligence of the defendant was in its omission to block the frog, which the evidence tends to prove may have been done by fastening timber or something in between the converging rails constituting the frog, so as to prevent the entry of the foot into the space between them and below the ball, or lateral projection of the rails at the place where liable to be caught.
There is evidence to the effect that this could be done and the danger of thus getting caught obviated, although it was not usual to so guard them.
The propriety of blocking frogs was a controverted question upon the trial. The disadvantages of it in the operation of railroads and the consequences liable to be produced by such blocking, were considerations presented by the evi *259 deuce on the one hand against blocking the frogs, and which tended to show that reasonable care on the part of the company did not require it to be done; and on the other hand the evidence tended to prove that it was practicable to maintain such blocking without material inconvenience to the operation of the road.
We think there was sufficient evidence to present to the jury the question as one of fact whether the defendant was chargeable with want of ordinary care for omission to block the frog which occasioned the calamity complained of and to support the conclusion of negligence of the defendant in behalf of a party to whom it owed a duty in that respect. Mayor v. Chicago, R. I. and P. Ry. Co., 8 Am. and Eng. R. R, Cases, 527.
The court charged the jury that:
“ It was the duty of the company to furnish proper tracks and proper impliments to provide for the safety of its employes, and if there is any omission of the company in this regard, if it did not furnish proper implements, then it would he guilty of negligence in omitting to do it.”
An exception was taken. This duty of the company to its employees is not absolute, nor is negligence on its part necessarily the result of imperfection of structures and implements furnished by it, although an injury is occasioned to them by such defective condition. The undertaking and duty of the company to its servants is to use ordinary care in that respect with a view to their protection, and that they m ay not unnecessarily be exposed to danger from imperfect or defective structures, machinery and appliances relating to the business and its operation, and omission to do this by which injury results to its employees is negligence.
While in this portion of the charge the qualification which the law requires and applies to constitute negligence is not observed, its effect seems to be modified as applied to this case by the further charge that if the jury should
“ Say that reasonable diligence and proper regard for the safety of employees required that this company should use 1 locks in the frogs, and that in this regard it omit ed to discharge its duty, and was negligent * * * then so far as that branch of the case is concerned, it would be established that the defendant was in fault ® * but if you should find that the company had performed its duty in this regard, and that the character of the frogs furnished was proper and reasonable, and' that the company had exercised proper diligence * then the case will go no further.”
This fairly presents the question to the consideration of the jury upon the evidence, and takes from the somewhat abstract proposition first stated, so far as pertinent and applied to this case, its unqualified character. And if any further instruction, in that respect, to the jury was desired by the defense, it could very properly have been asked, and probably would have been given. In view' of the charge as a whole, we think no error is presented by this exception.
*260 The more difficult question is whether the defendant owed to the deceased the duty of blocking the frog which caused the injury. The defendant’s counsel requested the court to charge
“ That this frog remained while appellant was in the employ of the defendant in the condition * * * it was at the time of the accident, and was in plain sight, and he knew of its existence, the deceased took the risk incident to its existence, and the plaintiff cannot recover.”
Which the court declined to charge, and defendant excepted. And the court submitted to the jury the question
“Whether the deceased knew that his foot was in danger of getting in there while he was engaged in coupling or uncoupling * * * whether he knew the extent of the opening, and the way in which his foot might be caught in the opening * * and did the deceased know of this danger, and to the extent that the foot was liable to be caught there when coupling or uncoupling.”
The defendant’s counsel excepted to the submission to the jury to find whether the deceased, knowing of the existence of the frog unblocked, knew or did not know of the danger to him in the discharge of his duties incident to the frog as it was. And further requested the court to charge that this frog was in plain sight during the employment of the deceased by the defendant, and that he assumed the risks incident to it; and took exception to the refusal to so charge. In the instruction to the jury the court assumed that the existence of the frogs in the yard was known to the deceased, and added that if he comprehended the- danger of them he could not recover.
So the proposition presented here by the charge and exceptions is whether the fact of knowledge or want of knowledge of the deceased, of the liability and danger of getting caught in the frog (although he knew of its existence), was properly for the jury upon the question of the liability of the defendant. In other words, whether the conclusion was justified that there was an element of danger incident to the frog, which, and the consequences of which, defendant was charged with a duty to the deceased to guard him against, by such means as could by ordinary care be applied for that purpose.
When the deceased entered upon the employment of the defendant he assumed the ordinary risks incident to the service, which embraced the character, position and condition of structures, so far as they were obvious, or of which he had knowledge, so that the defendant was not required, for his protection against danger or liability to injury from them, to make any change or improvements.
By his acceptance of the service, and continuance in it, he assumed the hazards incident to such obvious, or such known situation or condition. Gibson v. Erie Railway Co., 63 N. Y., 449; Powers v. N. Y. L. E. and W. R. R. *261 Co., 98 N. Y., 274; Lovejoy v. Boston and L. R. R. Co., 125 Mass., 79; Moulton v. Gage, 138 id., 390.
It must be assumed that the deceased knew of the existence of the frog.
Its existence was obvious. He was daily or nightly engaged in his work of coupling and uncoupling cars near and over them, as those were the points in the yard where cars were detached and thrown from one track to another, as distribution of them required. He was also chargeable with knowledge of its apparent form and condition, and that it was not blocked.
It is contended on the part of the plaintiff that this apparent condition did not disclose and render obvious the particular formation of the structure, which prevented the extrication of the foot placed within it, and thus gave liability to danger to the employee. The frog is constituted in part by converging rails. This convergence is from a separation of width of the track to two and a half inches apart, and the rails become a part of the frog within a few feet of that point. These rails have at the bottom a flange, through which they are spiked to the ties, and at the top they have a lateral projection called the ball of the rail, thus giving a wider space between the rails intermediate their flange and ball than at the surface, so that a foot within there may so occupy the space between the inner surfaces of the rails that it cannot be taken out by a vertical movement, and can only be extricated by being drawn back into a wider space between the rails. This was the manner in which Appel’s foot was caught, and the position he was in at the time, and on account of the moving cars he could not draw his foot back to the wider space.
It may be assumed for the purposes of the question here that if he could have withdrawn his foot by a directly upward movement, he would have escaped injury.
The deceased was chargeable with knowledge of obvious conditions, and beyond that he had the right to assume that the defendant by want of ordinary care would not expose him to danger or injury while engaged in the service. Conolly v. Poillon, 41 Barb., 366, 369; affirmed, 41 N. Y., 619; Noyes v. Smith, 28 Vt., 59; approved in 24 N. Y., 414; Jetter v. N. Y. and. H. R. R. R. Co., 2 Abb. Ct. App. Dec., 458; Kain v. Smith, 89 N. Y., 375. And to charge the employe with knowledge of defective condition not obvious, it must appear that he knew, or necessarily must have known, that it was such as to render it dangerous in the service which his employment called upon him to perform. Mehan v. Syracuse, B. and N. Y. R. R. Co., 73 N. Y., 585; Hawley v. Northern C. Ry. Co., 82 id., 370.
The question here is whether the condition of this frog *262 was apparent and obvious, so that the deceased was chargeable with knowledge that his foot might get caught in it, and thus expose him to danger from .moving cars. He knew the form of the structure, and that he was hable to get his foot between the converging rails. And it is not important whether or not he fully comprehended the difficulty of extricating his foot, if he knew the situation of the inner surfaces of the rails. There is but one standard applicable as matter of law for the government of the conduct of employes of mature years under like circumstances. While one may have more intelligence and caution and observe his movements with greater care than another, the rule of law applies alike to both -under the same circumstances in other respects.
If, therefore, he was chargeable with knowledge of the condition of these rails, he was likewise charged with notice of the manner and difficulty of removing his foot when within them at a point where it could not be raised directly out, and of the danger of the situation in which he might then be placed. It "would then come within the hazards of the service he had assumed. De Forest v. Jewett, 88 N. Y., 264 ; affirming, 23 Hun, 490 ; S. C., 19 id., 509.
The deceased was a night workman ; was supplied with light by his lantern ; his work of coupling and uncoupling cars required rapid movements, and attention to the particular act of service in which he was engaged. He could see, and was required to know that these frogs were there, and to observe their form and mode of structure, so far as represented by the surface. But it cannot, as matter of law, be said that ordinary care on his part required him by experiment or by observation (other than what was obvious to it) to ascertain whether the appearance which they gave did or did not fairly or fully represent the character of the less exposed portion of the structure, or of the danger to which he might be exposed if his feet entered it.
In the Be Forest Case, the accident was suffered by an employe who was engaged in coupling cars, and was occasioned by his stepping into an open sluice or ditch (of which there were several in the yard), by which he was caught, and being unable to extricate himself was run over and killed.
It was in the daytime. The ditches were ¡plainly visible. “ He knew their location, and so far as could be determined by seeing them daily he could tell their width and depth and the manner of their construction.” And the court then add: “Whatever there was of danger to one engaged in coupling of cars in this yard must have been apparent and obvious to him. This is not a case therefore of latent *263 or secret danger unknown to the servant, but which should have been known to the master.”
That case was decided upon the authority and principle of Gibson v. Erie Railway Co., where the cause of the injury and death was apparent to ordinary observation. If in the case at bar the deceased by stepping into the frog had stumbled and fallen and thus been run upon by the cars and killed, there would have been no liability of the defendant. In the De Forest Case, the size of the ditch was apparent and there does not appear in the report of it, that there was any internal cause produced by the manner of construction of the sluice or any cause not apparent to the employee to produce difficulty of his extrication, but its sides were perpendicular and its width and depth were about six to eight inches. That case may be distinguished from this one, as in the former the condition of the structure was necessarily apparent, while in the latter a more careful observation was required to ascertain the cause from which danger might have been apprehended. When the plaintiff’s intestate is relieved from contributory negligence the burden is with the defendant to prove that the structure and its condition, which caused the injury, was obvious and apparent to bring the result within the hazards assumed by him in the service. It is very likely that the rails of the frog are the same in form and structure as they are in their divergence from it, and it may be that the employee was for that reason, if for no other, advised of the form of the rails, and the difference in space that it gave between them at their centre and the surface; and it may be somewhat difficult to suppose that he did not have some knowledge of the condition in this respect of the frogs in the yard. But whether it was obvious within the meaning of that term as applied to the relation between master and servant, so as to embrace it within the hazards assumed by him, is at least a close question. We are with some hesitation inclined to hold that it cannot as matter of law, be said that the condition of the structure by which the foot was caught, and the injury occasioned was obvious and apparent within the meaning of the rule, and that the exception in that respect, is not well taken.
It does not seem to have been the purpose of the court in the charge to distinguish want of knowledge of the danger from want of knowledge of the condition of the frog, so as to permit the former to go in support of the action with knowledge of the condition which furnished the liability to such danger. Nor do we think it fairly entitled to that construction. If it is, there was error, for knowledge of the situation would charge him with that of its danger. And this was the error in the charge of the trial court in the *264 De Forest case. The condition of the trench being obvious, the knowledge that it must be assumed he had in that respect, charged him with knowledge of its danger, and that which might and , did result from his stepping into it. And, therefore, there was no question of danger and consequences for the jury. In the case at bar the jury were justified in finding that the deceased was not chargeable with contributory negligence at the time of the accident. The act of entering between the cars, drawing the coupling pin and stepping out, required rapid movement, and may necessarily have occupied his entire attention, as he had given the signal for the backing up of the train, and its movement was evidently immediate. So that the support of the action on this branch of the case depends upon the question whether the accident came within the hazards assumed by the deceased.
And, upon this proposition, we think the contention of the defendant’s counsel, that ordinary care and observation on the part of the deceased would have disclosed to him the danger, and, therefore, he was chargeable with notice of it and cannot recover, is not supported as matter of law.
When it cannot be assumed that the situation which caused the injury was apparent and obvious, the question whether it would have been brought within the knowledge of the deceased by the exercise of ordinary care, was one of fact for the jury in view of all the circumstances. Rummell v. Dilworth, 3 Est. Rep., 820; Kain v. Smith, 39 N. Y., 385.
The other exceptions taken on the trial have been carefully examined, and none of them are deemed well taken.
The motion for a new trial should be denied and judgment ordered on the verdict.
Smith, P. J. concurs; Barker, J., dissents; Haight, J., not voting.