JOHN Y. MONAGHAN, PLAINTIFF, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, DEFENDANT.

45  113
4ap205
45  113
42ap477

*Liability of a railroad company for injuries sustained by its employes — when it is not liable for the negligence of a telegraph operator employed by it — an engineer running a locomotive with knowledge of its defective condition cannot recover for injuries resulting from such defects.*

The plaintiff, a locomotive engineer in the service of the defendant, after having returned from a trip, made with an engine and a train of cars from Rochester to Lyons, detached his engine from the train, ran to a Y, in the western part of the city of Rochester, to turn the engine around, and having done so was proceeding east with the engine when it was run into by another engine and the plaintiff received the injuries to recover damages for which this action was brought. Owing to the fact that the defendant was, at the time of the accident, engaged in elevating its tracks through the city, all trains going east through the city, west of York street, ran upon a single track; all the trains from Buffalo, Niagara Falls and Charlotte, which ran west of Childs street (the street next west

of York street and distant 300 feet from it), having usually six tracks to run upon, being compelled to run upon one track, the continuation of the track known as No. 2. When the plaintiff was returning on the Niagara Falls track a freight train, heading east standing on track No. 3, cut off his view of track No. 1, on which stood an engine and caboose, also headed east.

The defendant had a telegraph station at Childs street from which signals were to be given to regulate the movement of trains going east, and its rules required that east-bound trains, from the Niagara Falls line and Charlotte, should stop at Childs street, before entering upon the four tracks, until the operators gave them the signal to go ahead. As the plaintiff came in on the Niagara Falls track a person from the station gave a signal to proceed, which was taken by the three engineers as applicable to them, respectively, but the engineer of the freight train, on being advised that it was not meant for him, stopped while the engine on track No. 1 proceeded and met and collided with the plaintiff's engine at the point of junction.

*Held,* that the plaintiff could not recover upon the ground that he was placed in the position which caused the collision by the fault and negligence of the defendant's telegraph operator and that his negligence was that of the defendant, as the telegraph operator was a co-employe of the plaintiff, and neither his competency nor the sufficiency of the rules and their reasonable application to the situation were questioned.

It was claimed by the plaintiff that the injury was occasioned by the defective condition of his locomotive, evidence being given which tended to prove that the flues and throttle, and the valves in the cylinder or steam chest, leaked, and that the brake was out of repair and useless.

*Held,* that as the evidence showed that the plaintiff was an engineer of some years' experience, and that he proceeded to run the engine with full knowledge and appreciation of the condition of the engine, the defendant was not liable to him for the consequences resulting therefrom.

MOTION by the plaintiff for a new trial on exceptions taken at Monroe Circuit, and ordered heard at General Term in the first instance.

The action was brought to recover damages for personal injuries of the plaintiff alleged to have been occasioned by the negligence of the defendant. At the close of the evidence on the part of the plaintiff a nonsuit was directed. He moved for a new trial.

*William S. Oliver,* for the plaintiff.

*A. H. Harris,* for the defendant.

BRADLEY, J. :

The plaintiff, a locomotive engineer in the service of the defendant, made a trip on the defendant's road from Rochester to Lyons

and return on the morning of May 21, 1882, with an engine and train of cars. After his return the engine was detached from the train and run to a Y in the western part of the city of Rochester to turn it around, and having done so, he was proceeding east with the engine when it was run into by another engine and the plaintiff received severe personal injury. The defendant was then engaged in elevating its tracks through the city, in consequence of which its then provision was such that all trains going east through the city west of York street were run upon a single track. This situation brought there on to the single track the trains from Buffalo, Niagara Falls and Charlotte. The next street west of York street, and 300 feet therefrom, is Childs street, west from which were six tracks of the defendant's road numbered, from the south, one to six. The Buffalo track was No. 1 and the Niagara Falls track came in from the northerly side. And the single track, to which the convergence was made at or near York street to proceed east therefrom, was No. 2.

When the plaintiff was returning from the Y on the Niagara Falls track there was a freight train headed east standing on track No 3, and from 100 to 200 feet west of Childs street, which the evidence tends to prove cut off his view from an engine and caboose on the Buffalo track No. 1, also headed east. The defendant had a telegraph station at Childs street from which signals were to be given to regulate the movement of trains going east, and its rules required that east bound trains from the Falls line and Charlotte should stop at Childs street before entering upon the four tracks until the operator gave them signal to go ahead, and that no east bound freight trains on main line pass Childs street until told by the operator that all was clear. As the plaintiff with his engine came in on the Falls track, and some distance west of Childs street, he, by the use of the steam whistle of his engine, sought to call the attention of the operator to his situation, and a person from the station gave a signal to proceed, which was taken by the three engineers, whose engines were situated as before mentioned, as applicable to them respectively, but the engineer of the freight train was advised that it was not intended for him, and his train remained, while the engine on track No. 1, and that in charge of the plaintiff proceeded forward. They

passed the freight train about the same time, the plaintiff's a little in advance of the other. Immediately after passing the freight train, the plaintiff commenced to diagonally cross the main tracks to reach No. 2, and the engine which came in on track No. 1 was proceeding to the same point, the junction of which was near York street. It seems that the signal from the operator to go forward was intended only for the engine and caboose on the Buffalo track, and when the plaintiff's engine came on to Childs street, signal was given to him to stop, which he undertook to do by shutting off steam and reversal of the motive power of his engine, and seeing that it did not stop the engine, and that it was too far ahead to stop in time to avoid collision, he concluded to restore the power to give it forward motion, and in his attempt to change the reverse lever for that purpose the throttle or handle blew out and he could not operate the lever, and the pressure of the steam remained reversed and tended to stay its forward motion, although the pressure was so low that the engine continued to move ahead; and the approaching engine struck the tender of the plaintiff's engine producing the collision and injury complained of. The plaintiff charges that the injury was occasioned by the defective condition of the engine, also that the plaintiff was placed in the position which caused the collision by the fault and negligence of the defendant's telegraph operator at Childs street station, and that his negligence was that of the defendant. The relation of representative, in the sense requisite to render the performance of an act of the servant that of the principal, does not necessarily depend upon his rank in the service, but upon the character of the act he is called upon to perform. (*Crispin* v. *Babbitt*, 81 N. Y., 516.) In view of the situation at the location in question the defendant had organized a system with a view to the operation with reasonable dispatch and safety of this portion of its road. It had made rules for that purpose, of which the plaintiff was advised, and had employed men to conduct that system, direct its execution, and to aid in the observance of the rules so provided. There is no question about the sufficiency of these rules and their reasonable application to the situation. The telegraph operator was charged with important duties at that point, as upon him was imposed the duty of controlling and directing the movement of trains there. This was within the system which the rules provided for at that particular locality, and did not make

him the *alter ego* of the defendant. (*Slater* v. *Jewett*, 85 N. Y., 61.) The service required of him was within and subordinate to a department of the business of the company, in the performance of which he necessarily had to exercise some discretion and judgment in giving preference by means of signals in the movement of trains on to the single track, with view to the safety and protection of persons and property, and for the orderly operation of the road, but that did not make his judgment that of the company as between it and its employes. It was only a grade in relation of co-employe, and it is sufficient that he was competent for the place, which is not questioned. (*Brick* v. *R. N. Y. and P. R. R. Co.*, 98 N. Y., 211; *Hofnagle* v. *N. Y. C. and H. R. R. R. Co.*, 55 id., 608; *McCosker* v. *L. I. R. R. Co.*, 84 id., 77; *Loughlin* v. *The State*, 7 Cent. Rep., 70.) He was a co-employe of the plaintiff.

It was the duty of the defendant to use reasonable care in supplying its employes with suitable machinery, tools and appliances, so that they might not unnecessarily be exposed to danger from their use in the service. This, it is contended on the part of the plaintiff, the defendant failed to do, and that the injury of the plaintiff was the consequence of such negligence, and caused wholly by it. The difficulty was in the engine and its apparatus. The alleged defective conditions were that the flues leaked, that the valves in the cylinder or steam chest leaked, that the throttle leaked, and that the brake was out of repair and useless. There is evidence tending to prove that the condition of the engine and its machinery was impaired in the respects mentioned. The flues had leaked quite badly for some time, the consequence of which was that it was difficult to keep up the fire so as to maintain the requisite quantity of steam to give the engine suitable operative power. This had been so for some time and the attention of the train dispatcher had been called to it, but the engine had, nevertheless, been used upon a coal train between Rochester and Lyons, with reasonable success, although such leakage had required increased labor to keep up fire to generate steam sufficiently to supply suitable motive power to run the train. The only danger to be apprehended from such cause in the use of an engine is the liability of the reduction of steam pressure to such extent as to render it difficult by means of the levers operating the valves to control the motion of the engine.

The evidence tends to prove that this was one difficulty at and preceding the time of the accident.    The engine was returning with only forty-five pounds of steam, and had not the power to stop on reversal of its force from a forward to a backward motion by the use of the lever.    But although this day was the first time the plaintiff had run this engine, he was advised of this leakage of the flues before he left Rochester in the morning, and observed it on his trip to Lyons; and on his return with a train of loaded coal cars, the train was stopped on approaching an up grade, when the steam had got quite low, and, with the application of a blower, was raised from sixty or seventy pounds to 125 or 130, a fair standard for the operation of an engine in drawing a loaded train, and the train was then, without difficulty, taken up the grade.    It is evident that, without continued care to keep up the fire so as to overcome the leakage of water from the flues into the fire-box, the leakage was liable to reduce the heat and diminished the steam and motive power of the engine; and to this may be attributed the reduction to forty-five pounds of steam at the time the engine was returning from the Y to its place of destination.    That quantity was sufficient for such purpose, although inadequate to the speedy control of its movement.    This defect in the engine related to its operative power, and it was not dangerous in its use to those employed to operate it; but the supply and maintenance of the requisite motive power for its operation, and to overcome emergencies that might arise, required more than usual care and labor of the fireman.    This was the apparent situation presented by this defective condition of the flues, which could as well be appreciated by an engineer running it as by any other person engaged in the business of the company.    The plaintiff was a locomotive engineer of some years' experience.    This difficulty was known to him when he took charge of the engine in the morning, and its extent and effect were observed by him on the trip and before his return with it to Rochester; and, so far as this particular defect contributed to the accident and injury, it was within the hazards assumed by him. And the same may be said in relation to the leakage of the steam chest and throttle.    (*Burke* v. *Witherbee*, 98 N. Y., 562; *Marsh* v. *Chickering*, 101 id., 312; *Bajus* v. *S. B. and N. Y. R. R. Co.*, 103 id., 312.)    If it had not appeared by the evidence that the

plaintiff knew of the useless condition of the brake on the engine before it was detached from the train, and he undertook to take it to the Y after the return from Lyons, we should be inclined to think there was a question for the jury to say whether the use of it in order might not have been effectually made to prevent the accident and injury to the plaintiff. But it appears that the plaintiff also knew the condition of the brake. The witness Sullivan says that the plaintiff went to the brake that morning, tried to turn it and asked what was the matter with it, and was informed that it was useless. He, therefore, knew that after it was detached from the train, there was no means to be applied to retard the movement of the engine, or to stop it, other than the levers under his control; and in view of his profession and experience, it cannot be said that he did not appreciate the situation or condition and the inconveniences that might arise from them.

The liability of this engine to be subjected to loss of motive power, so as not to enable the engineer to effectually use his levers to retard the motion of it as occasion might require, gave a greater necessity for a brake than otherwise might be supposed to exist for it. But the plaintiff having proceeded to run the engine with full knowledge and appreciation of the situation, the defendant is not chargeable to him for the consequences resulting from it. (*Powers v N. Y, L. E. and W. R. R. Co.*, 98 N. Y., 274, *Marsh v. Chickering, supra.*) Reference is made by counsel to *Hawley v. N. C. Railway Company* (82 N. Y., 370) as asserting a contrary rule, but there it did not appear that the plaintiff knew how badly the road upon which he ran an engine and was injured, was out of repair, and it was held that under the circumstances he was at liberty to rely upon the judgment of the officers, under whose direction he ran, that the road was in a condition of safety We do not see how that reason can be applied to the case at bar in support of the action.

The conclusion seems to follow that the motion for a new trial should be denied, and judgment directed on the nonsuit.

SMITH, P. J., and HAIGHT, J., concurred.

Motion for a new trial denied, and judgment ordered for the defendant on the nonsuit.