Harden, P. J.
In Leonard v. Collins (70 N. Y., 90), it was said that in determining the question of the master’s negligence the.jury are to inquire whether under the circumstance_s proved, the master did anything, which in the exercise of reasonable and ordinary care and prudence, he ought not to have done, or omitted precautions which a prudent and careful man ought to have taken, and as they shall find on this question (if there was no negligence on the part of the servant), determine their verdict.
*228 The doctrine of this case was referred to approvingly in , Pantzar v. Iron Co. (99 N. Y., 375); the rule is again stated in Probst v. Delamater (100 N. Y., 272), and it is added that the rule “ is not an absolute one and is satisfied by the exercise of reasonable care and prudence on the part of the master in the manufacture, selection and repair of such appliances.”
The rule is again stated in Abel v. D. & H. Co. (103 N. Y., 581; 4 N. Y. State Rep., 269), where it is said “ the law imposes upon a railroad company the duty to its employees of diligence and care, not only to furnish proper and reasonably safe appliances and machinery, etc.”
It is again stated in Burke v. Witherbee et al. (98 N. Y., 565), whether the defendant had complied with the rule, by furnishing the plaintiff with a reasonably safe place in which to perform the delicate, difficult and dangerous duty of coupling trains, was the question submitted to the jury.
They have found the defendant was negligent of its duty.
It is said that the risk was assumed.by the plaintiff when he entered into and continued in. the employ of the defendant.
Our attention is directed to Deforest v. Jewett (88 N. Y., 268), where it is said the servant “ assumes apparent risks, and cannot call upon his employer to make alterations to secure safety.”
In that case the servant worked in the day time, in this case in the night time, at the time of the injury. There the servant had been engaged two years nearly, here only some four months.
And the court said, viz.: “"Whatever there was of danger “to one engaged in the coupling of cars in this yard must have been apparent and obvious to him.”
In this case the plaintiff testified he did not know of the . ditch or of the hole into which his foot slipped and “let him in nearly up to his knees.” The jury may have and probably did believe him, though his evidence may have seemed somewhat improbable.
In Haas v. Buffalo R. Co. (40 Hun, 149), it appears clearly the plaintiff knew “of the existance of the guardrail” the construction of which was alleged to have been improper.
In Powers v. N. Y. R. R. Co. (98 N. Y., 274), it appeared clearly that the servant knew of the detective condition of the hand-car, and that by his aiding in its use by means of a crow-bar he assumed all the risk incident to its use.
Assuming the. plaintiff did not know of the unsafe condition of the place where the coupling was done, as the jury *229 have found it was, and that he did not know of it, the cases just cited do not stand in the way of plaintiff’s right to recover.
In this case, as in Williams v. D., L. and W. R. R. Co. (39 Hun, 430), there is the evidence of the servant that he did not know of the unsafe condition of the defendant’s road at the point where he received the injury.
In that case, as in this one, there were many circumstances disclosed from which it might be inferred the servant had knowledge, but there as here, the jury seem to have believed the servant.
The defendant requested and the court charged that the plaintiff could not recover if he knew “of the existence of this gutter, then he took the risks incident to its existence.”
In the body of the charge the trial judge laid down the rules of the law, and though he commented at considerable length upon the facts, he fairly and squarely left the questions of fact to the jury. It cannot be seen from his charge that he mistook the evidence; the plaintiff testified that “as I was walking along, I stepped out and stepped off the end of the tie with my left foot and went down about half way up to my knee, and at the same time I stepped off with my right foot and the wheel caught my overalls and drew me under.” This evidence bore upon the depth of the ditch or trench at the point where the injuries were received. The learned trial judge left it to the jury to determine “in regard to the depth of this trench” when he said all that is a question of fact for the jury.
We see no error in the charge presented by the exceptions to it, or in the refusals, of which the defendant can complain.
If it can avoid the verdict, it must be because other minds view the evidence differently from the jury, and because the foregoing comments thereon are not satisfactory to the ultimate tribunal.
Judgment and order affirmed, with costs.
Follett, J., concurs; Martin, J„, not sitting.