STANDTKE v. SWITS CONDE CO.

(Supreme Court, Appellate Division, Fourth Department.   July 24, 1900.)

1. MASTER AND SERVANT—DEFECTIVE MACHINERY—NEGLIGENCE—SERVANT'S
    KNOWLEDGE—SIMILAR OPERATION—MASTER'S LIABILITY.
        No recovery can be had for negligence of a master in providing a defect-
    ive cotton-drying machine, where the evidence shows that the machine
    worked just the same in drying cotton as in drying other materials and
    that, though the apron was worn and did not operate as it should have
    done, such defects had existed during the servant's employment of over 19
    months in drying other materials therein, and, with the dangers arising
    therefrom, were well known to him.

2. SAME—READJUSTMENT OF MACHINERY—EVIDENCE—CONTRIBUTORY NEGLI-
    GENCE.
        The space between adjustable rollers of a machine ordinarily used for
    drying other materials was increased, by a process exceedingly simple, to
    permit of its use for drying cotton.  A servant, who had operated the ma-
    chine for 19 months, and was thoroughly familiar with it, witnessed the
    adjustment, and thereafter his left hand, with which he was retarding the
    motion of the cotton towards the rollers, was drawn between them and
    mangled.  *Held,* that though defects, of which the servant knew, made it
    necessary to so retard the movement of the cotton, and the master omit-
    ted to call his attention to the increased space between the rollers caused
    by such adjustment, no recovery could be had for such injuries, since the
    proximate cause of the injury was his own act.

Appeal from trial term, Oswego county.

Action for injuries by Carl Standtke against the Swits Conde Com-
pany.  From a judgment in favor of plaintiff, and from an order deny-
ing a motion for a new trial, defendant appeals.  Reversed.

The defendant is a domestic corporation, and at the times hereinafter men-
tioned was engaged in the manufacture of cotton and woolen goods at the
city of Oswego, in this state.  The plaintiff was its employé, and as such had
charge of a machine known as an "automatic stock dryer," which was used to
dry wool, cotton, shoddy, silk, or other similar substances used by the defend-
ant in its business.  The material to be dried in this machine is first washed,
and then placed in the hydro extractor, sometimes called a "whizzer," wherein
by centrifugal force the water is extracted from it.  Then it is taken, in a
loose, moist condition, to the automatic dryer, where, after being subjected to
a drying process, it is made into yarn.  When taken to the dryer the wool or
other material is thrown into a hopper, from which it is picked up and carried
by a vertical conveyor, having small steel pins upon its surface, to a horizon-
tal apron, which is an endless contrivance passing around two pulleys, and at
the upper end are two rollers which catch the material as it is dropped upon
the apron and press it with such force as to extract any moisture which may
remain, after which it is conveyed by another apron into the steam chamber,
where the process of drying is completed.  Attached to the stock dryer is a
horizontal rod, at the end of which is a weight; and by operating this rod the
upper roller, with which it is connected by means of a vertical rod and a hori-
zontal beam, can be slightly raised or lowered so as to increase or diminish the
space between the two rollers as circumstances may require.  Between the
hopper and the conveyor is what is termed a "comb," which is designed to
catch and throw back into the hopper such material as is more than one inch
in thickness, although pieces somewhat thicker than that do sometimes pass
through the comb and onto the apron; and when this happens the material,
whatever it may be, is liable to clog at the rollers, which revolve in opposite
directions at the rate of 10 revolutions per minute, and thereby impede the
operation of drying.  The plaintiff was placed in charge of this machine in
May, 1897, and continued to operate it until January 11, 1899, when he was
laid off for two weeks.  He returned to his work on the 25th day of January,.

when, for the first time during his employment, the machine was operated for drying cotton in the place of wool, as had theretofore been the case, and to accomplish this purpose the weight was so adjusted as to slightly increase the space between the rollers. During the forenoon of January 26th, while engaged in this occupation, the cotton became clogged; and, in attempting to loosen it and spread it out upon the apron, the plaintiff's left hand was drawn between the rollers and was so badly lacerated that an amputation of the forearm between the wrist and elbow became necessary. This action was brought to recover damages for the injuries thus sustained. Upon the trial the defendant's counsel moved for a nonsuit at the close of the plaintiff's case, and again upon the entire evidence. Both motions were denied, and a recovery of $4,000 was had. Counsel duly excepted to the refusal to nonsuit, and from the judgment subsequently entered, as well as from an order denying the defendant's motion for a new trial on the minutes, this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Elisha B. Powell, for appellant.

D. P. Morehouse, for respondent.

ADAMS, P. J. The plaintiff, in his complaint, alleges, among other things, that the defendant negligently furnished to him, for the work required of him, a defective, unfit, improper, and unsafe machine, and, when called upon to specify in what respect the machine in question was defective and unsafe, served a bill of particulars in which it was stated that the automatic stock dryer was a wool-drying, and not a cotton-drying, machine; that the feeder did not properly distribute the cotton over or upon the apron that conveyed it to the rollers; that the apron was old and worn out; that its slats and links were broken, in consequence of which it was stretched to an improper length; and that it was too loose, and would not properly move, as it was intended to do and should have done. Upon the trial it was made to appear that the apron had become somewhat worn by constant use, and that by reason thereof it did not operate as freely and properly as it should have done, but the plaintiff was forced to admit that these defects had existed ever since he had entered the defendant's service; that he knew of their existence, and fully appreciated the consequences which flowed therefrom; and that, with this knowledge, he remained in the defendant's employ and continued to operate the machine. This being the case, the learned trial justice held, and so instructed the jury, that, in so far as the plaintiff's injury was directly attributable to any defect in the feeder or apron, he was not entitled to recover. The correctness of the instruction thus given is apparently not questioned by the plaintiff's counsel, and, inasmuch as the plaintiff also testified that the "operation and working of this machine is just the same whether it was cotton or wool or shoddy that was running through it," it would seem that no negligence can be predicated of such acts of commission or omission upon the part of the defendant as are specifically referred to in the plaintiff's bill of particulars. Powers v. Railroad Co., 98 N. Y. 274; Odell v. Railroad Co., 120 N. Y. 323, 24 N. E. 478. In this emergency, recourse was had to an allegation of the complaint which charges that the readjustment of the rollers for the purpose of drying cotton instead of wool increased the hazard to which the plaintiff was subjected, in that it

enlarged the space between the rollers to such an extent as to permit a person's hand to go between them, which, as it is claimed, was an utter impossibility prior to such readjustment, and that the plaintiff was not informed and did not know of this increased risk until the accident occurred. It was upon this theory that the case was sub- mitted to the jury, and it is the only one upon which the plaintiff's recovery can be sustained, if at all. In this connection it is proper to observe that the plaintiff testified that for a long time he had been in the habit of spreading the wool upon the apron as it was being con- veyed to the rollers, and that he did this with his left hand, while with his right he shoved the apron along when for any reason its mo- tion was retarded, and that while thus engaged his fingers would oc- casionally come into contact with the upper roller, but that he never experienced any difficulty therefrom, because the space between the rollers was too small to admit of any object as thick as a person's fingers, although he admits that prior to the readjustment of the weight this space was sometimes as much as an eighth of an inch. It is conceded by the defendant that the change in the weight was de- signed to increase somewhat the space between the rollers, and that this was done in order to facilitate the drying of cotton, which seems to require somewhat greater space than wool, but the precise extent of this increase is not made to appear. The plaintiff claims that he felt no pressure from the upper roller until the thick part of his hand came into contact with it, and from this it is argued that the space must have been sufficient to have admitted his fingers without touching them; but it seems that when his arm was withdrawn it was found that the laceration of the fingers extended clear to their tips, or as the plaintiff describes it, they were "mashed up like sausage meat." Up- on the other hand, the defendant gave evidence tending to show that, with the rollers adjusted as they were for drying wool, a stuffed glove would pass between them, and that when readjusted as they were at the time of the accident it was a physical impossibility for them to separate more than five-sixteenths of an inch without throwing the en- tire machinery out of gear. It is claimed that as to this particular feature of the case there was a clear conflict of evidence, which has been passed upon by the jury; but, admitting this to be so, we do not think there is any evidence which will sustain the theory contended for by the plaintiff,—that by reason of the readjustment of the rollers a bunch or thick wad of cotton would cause the upper roller to raise or jump half an inch or more, because it is perfectly obvious that this theory is based upon a condition of things which could by no possi- bility have existed. Fox v. Le Comte, 2 App. Div. 61, 37 N. Y. Supp. 316.

However, in the view which we take of the case, it is perhaps unim- portant that the exact extent of the increased space should be deter- mined; the more material and paramount question, to our mind, being whether, assuming, as we must, that the readjustment of the rollers did enlarge the opening between them, the risk caused thereby to the plaintiff while operating the machine was of such a character as to re- quire that under the circumstances he should have been informed of it and warned against it,—in short, whether the defendant, by omitting

to call the plaintiff's attention to this change in the adjustment of the machine, was guilty of negligence, for the consequences of which an action will lie. In determining this question it is important to ascertain just how this readjustment was accomplished, and what result it produced. As has already been stated, the pressure upon the upper roller is regulated by the weight attached to the vertical rod on the side of the machine; and, by a law of physics which must be familiar to a mere novice, it is obvious that, the lower this weight is dropped, the greater is the resultant pressure. On the occasion in question the weight was raised to a given point, and a wedge or pin inserted to retain it in place. The effect of this was, of course, to relieve somewhat the pressure upon the upper roller, and consequently to admit of more space between it and the lower roller. Thus, it will be seen that the result sought was accomplished by a process so exceedingly simple that it must necessarily have been comprehended by any person of ordinary intelligence who witnessed it. The plaintiff says he saw it done and how it was done, but he insists that he did not understand why it was done, or what effect the lifting of the weight had upon the rollers. We find it somewhat difficult, however, to give unlimited credence to this statement, in view of the plaintiff's evidence as to his intelligence and competency; for, by his own admission, he was neither an ignorant nor an inexperienced man. Before entering the defendant's service he had worked for the Standard Oil Company for about seven years, during which time he was engaged in running a heading machine, and for one year and seven months had had charge of this drying machine, and had operated it so constantly that he became very familiar with it and knew all about it. In short, to use his own language, he was "as conversant with it as any body could be    *    *    * and knew all about its different parts, and how they worked." This being the case, it is absurd to claim that he did not appreciate the effect of raising the weight, or realize that, however narrow the space, an object as pliable as the human hand could be drawn between the rollers, when placed at any point where they came in close proximity to each other. The contention of the learned counsel for the plaintiff is certainly a most ingenious one, but his client's description of the manner in which the accident occurred leads irresistibly to the conclusion that it was due, in a very large measure, at least, to his own negligence; for he says that as he stood by the side of the machine he had his left hand upon the apron, so as to keep the cotton from going into the rollers too rapidly, while at the same time he took hold of the edge of the apron with his right hand and pulled it, so as to facilitate the movement of the cotton towards the rollers. In other words, with one hand he was pushing the cotton towards the rollers, and with the other he was keeping it away from them; and while thus occupied he suddenly discovered that his left hand had gone between the rollers, and that it could not be withdrawn in time to prevent the lamentable consequences which ensued.

It was contended upon the trial, and it is still the plaintiff's contention, that this method of operating the machine was rendered necessary by reason of the defective condition of the apron; and it is barely possible that had that appliance been in proper condition, the plain-

65 N.Y.S.—60

tiff would have had no occasion to manipulate it, or the cotton upon it, in the way he did; but this circumstance furnishes no excuse for his doing that which he was under no obligation to do, and which it was obviously both dangerous and negligent for him to do. Odell v. Railroad Co., supra. Manifestly, as was said in a case somewhat similar to this, "the plaintiff was injured, not because he was ignorant or needed instructions, but because he was not cautious,—a fault which more frequently proceeds from confidence and familiarity with the use of machinery than from ignorance." Opinion of O'Brien, J. in McCue v. Manufacturing Co., 142 N. Y. 106, 36 N. E. 809. And consequently we conclude that, within well-settled principles of the law of negligence, the plaintiff failed to establish a cause of action against the defendant. Hickey v. Taaffe, 105 N. Y. 26, 37, 12 N. E. 286; Buckley v. Manufacturing Co., 113 N. Y. 540, 21 N. E. 717; Graves v. Brewer, 4 App. Div. 327, 38 N. Y. Supp. 566; De Young v. Irving, 5 App. Div. 499, 38 N. Y. Supp. 1089. It follows, therefore, that the learned trial court in denying the defendant's motion for a nonsuit committed error which calls for a reversal of the judgment and order appealed from.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.