KEARNEY v. HANLIEN.

(Supreme Court, Appellate Division, First Department.   March 8, 1912.)

1. MASTER AND SERVANT (§ 107*)—OBLIGATION OF MASTER—SAFE PLACE TO
   WORK.
   The obligation of a master to maintain a safe place for his servants
   applies only to permanent conditions, and does not apply to a stoneyard
   in charge of servants for the movement of stones to places in the yard as
   they see fit, since that is but a detail of the work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–
   202, 212, 254, 255; Dec. Dig. § 107.*]

2. MASTER AND SERVANT (§ 213*)—INJURY TO SERVANT—ASSUMPTION OF RISK.
   An employé, who had worked in a stoneyard under similar conditions
   for many years, and who has operated a derrick used in the movement of
   stones in the yard, is chargeable with knowledge of the appliances and
   their manner of working, and where he places himself between a stone
   to be moved and the revolving derrick sufficiently near to injure him, he
   assumes the risk as a matter of law.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 559–
   564; Dec. Dig. § 213.*]

3. NEW TRIAL (§ 72*)—POWER OF COURT—EFFECT OF LABOR LAW.
   Labor Law (Consol. Laws 1909, c. 31) § 202, making the question of as-
   sumption of risk one of fact only, requires the submission of the issue
   to the jury in the first instance, but does not deprive the court of the right
   to set aside a verdict as against the weight of the evidence.
   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 146–148; Dec.
   Dig. § 72;* Payment, Cent. Dig. § 251.]

Appeal from Trial Term, New York County.

Action by Samuel Kearney against Henry L. Hanlien, doing busi-
ness under the firm name and style of Henry Hanlien & Son. From a
judgment for plaintiff, and from an order denying a new trial, de-
fendant appeals.   Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and MILLER, JJ.

E. Clyde Sherwood (Allan E. Brosmith and William B. Davis, on
the brief), for appellant.
William A. Reynolds, for respondent.

LAUGHLIN, J.   The action is brought to recover damages for
personal injuries sustained by the plaintiff while in the employ of
the defendant on the 19th day of July, 1909, in a stoneyard on prem-
ises known as 400-417, 101st street.   The liability is predicated wholly
upon the common law.   It is charged that the defendant failed to
furnish the plaintiff a safe place in which to perform his duties, and
a sufficient number of fellow servants, and operated a derrick negli-
gently constructed, and failed to promulgate and enforce necessary
rules for the safety of the plaintiff.   The answer put in issue the alle-
gations of the complaint charging the defendant with negligence, and
further pleaded that the plaintiff, with full knowledge of the condi-
tions, assumed the risk of injury from the cause which resulted in
the injuries of which he complains.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff had been employed in the yard for a period of about 13 years, during which time the conditions remained substantially the same. His duties were not confined to any particular work, but, he did any work required in the yard, which was used for cutting and dressing blocks of stone weighing from 10 to 16 tons. There was a boom derrick operated by electricity in the center of the yard, and all the blocks of stone in the rough were brought in and deposited near it and left there until it became necessary to move them to other points to be sawed, cut, or dressed. The base of the mast of the derrick, and the electric controller and levers, and drum were inclosed in a small octagonal building, with a door on either side and three windows. The derrick was operated by an engineer who stood within the inclosure. The floor of this octagonal building was 4½ feet above the ground, and at each door there were three steps leading from the ground into the building. Each door formed one of the octagonal sides of the building, and three of the other sides were solid, and the windows were in the remaining three. About on a level with the floor, and at the angle of each door and the next octagonal side on the right-hand side of the door as one entered, a piece of timber projected out beyond the angles of the building 11 inches. The other dimensions are not given; but these projections are described as knobs, and at the outer end of each a brace, running from it to the boom, was fastened. A block of stone weighing about 14 tons had been brought to the yard and left on the ground, with the end towards the engine house, and quite near to it. The plaintiff and a fellow employé were directed by the foreman to have this block of stone moved to another place in the yard, and after they had passed a chain around the stone, and while plaintiff was engaged in removing some lumber so that the stone would swing clear when hoisted, the derrick revolved a distance of a quarter of a circle and pinned him between the stone and one of these knobs, injuring him severely. The engine house revolved with the arm of the derrick, and made a complete revolution in twenty seconds; and thus from the time it started until it came in contact with the plaintiff only about five seconds elapsed. No signal was given that the derrick would be revolved, and, owing to the other noises in the yard, the plaintiff did not hear it moving. According to the testimony of the plaintiff, the custom was for men desiring to have the derrick swung to a particular place to give the engineer a signal when they were ready; and the evidence shows that neither the plaintiff nor his fellow workman signaled the engineer to move it on this occasion, and that the engineer moved it on his own responsibility. The engineer testified that when he saw the chainers, as they are called, preparing to have a stone moved, it was customary for him to swing the arm of the derrick around to move the same without any signal. The construction of the engine house was such that from the position occupied by the engineer in the performance of his duty, he was unable to see the plaintiff at the time of the accident, or to discover that the plaintiff was in a position of danger.

The court submitted the case to the jury upon the theory that it was a question of fact for the jury to determine whether the defend-

ant should have made rules regulating the duties of his employés, or requiring the giving of notice or warning to those exposed to danger of injury from the derrick, and in that connection the court instructed the jury that if the plaintiff knew the danger he was quite as negligent, in placing himself in a position of danger, as was his employer, but left it to the jury to determine whether the plaintiff knew and appreciated the danger. The jury were further instructed that the engineer was a coservant, and there could be no recovery for any negligence on his part, but that if the engineer and the defendant were both negligent, then there might be a recovery. On the question of assumption of risk, however, the court instructed the jury, in effect, that no risk is assumed by the servant until the master has performed the duties devolving upon him. The court also, at the request of the attorney for the plaintiff, instructed the jury that:

"It was an absolute duty on the part of the defendant to furnish the plaintiff with a safe place to work, and he cannot delegate that duty."

And counsel for the defendant duly excepted.

[1] This was the last instruction given by the court. I am of opinion that it was erroneous, as applied to the facts of this case. The place in which the plaintiff was working was constantly changing with the movement of material about the yard. The injury was not owing to the fact that a safe place for the performance of his work was not furnished and maintained by his employer. The doctrine of safe place ordinarily applies only to permanent conditions. It has no application where the place itself is safe, but is rendered unsafe by the negligence of other employés. For instance, if a man should be placed at work where another employé in charge of a team may drive a wagon against him, that does not constitute the place an unsafe one within this doctrine. The place here was a stoneyard. It did not give way or cave in. No fixed structure or appliance collapsed or toppled over. The men in charge of the work of moving these heavy stones about to be sawed and dressed could place them where they saw fit. These were details of the work for which the master cannot be held responsible. If the men saw fit to place a large block of stone so near this octagonal building that its projecting angles when revolving would pinion them between the engine house and the stone, or so near that the two projections described would likewise pinion them, those were risks of the business which, at common law, were assumed by the employé.

[2] In view of the length of time plaintiff had worked in this yard, under like conditions, and of the fact that at times he had operated the derrick himself, he was chargeable with knowledge, not only that the engine house was there, but that its projections might, when it was revolved, pinch or pinion him; if he placed himself between a block of stone and the revolving derrick sufficiently near, and therefore at common law he assumed the risk as matter of law. Powers v. N. Y., Lake Erie & W. R. Co., 98 N. Y. 274; Gibson v. Erie R. Co., 63 N. Y. 449, 20 Am. Rep. 552; De Forest v. Jewett, 88 N. Y. 264.

[3] It is not claimed that section 202 of the Labor Law (Consol. Laws 1909, c. 31), which changes the common-law rule of assumption of risk and makes it a question of fact for the jury, is applicable to this case, and it is therefore unnecessary to express any opinion thereon; but it may be observed that, if it were applicable, it would only require the submission of the question to the jury in the first instance, which has been done here, and the verdict might still be set aside as against the weight of evidence on that point, and should be even if the statute were applicable.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN and CLARKE, JJ., concur. INGRAHAM, P. J., and MILLER, J., concur on the ground that there was no evidence to justify a finding that the defendant was negligent.