### FOX v. LE COMTE.

(Supreme Court, Appellate Division, Second Department. February 11, 1896.)

1. MASTER AND SERVANT—KNOWLEDGE OF DEFECTS—NOTICE TO VICE PRINCIPAL.
   Knowledge, on the part of a machinist intrusted by his principal with the duty of keeping in repair the machinery in his factory, as to the defective condition of machinery by which another employé was injured, is notice to the master.

2. MASTER AND SERVANT—ASSUMPTION OF RISK—EVIDENCE.
   In an action by a servant against his master for injuries received while working on a press for pressing caps for tin cans, by having his thumb caught between the plunger and the die on which the tin disks were placed, it appeared that the drop of the plunger was intended to be controlled by pressure with the foot upon a treadle, which caused clutch bolts in the axle (around which the driving wheel of the press revolved without moving it) to drop into countersunk holes in the hub of the wheel; thereby locking the axle to the wheel, and communicating motion to the plunger. Plaintiff testified that on the day before the accident there was a continual, unusual, clicking sound about the press, and that the plunger dropped several times without any pressure being placed on the treadle; that he notified the machinist of the drop of the plunger, who attempted to fix it; that on the day of the accident he again stated to the machinist that the machine was "clicking and the punch going up and down," who, after hammering around the press a little, told him that the machine was all right; the clicking, though, still kept up. Plaintiff also testified that he did not know that the clicking was a sign that the machine was out of order, and other witnesses testified that the clicking did not indicate such fact. Held, that the evidence did not show, as a matter of law, that plaintiff knew that the clicking was a sign that the machine was out of order, and therefore assumed the risk therefrom by reason of the plunger's dropping without pressure being placed on the treadle. Pratt and Hatch, JJ., dissenting.

Appeal from city court of Brooklyn, trial term.

Action by William Fox, an infant, by Mary Fox, his guardian ad litem, against Joseph Le Comte. From a judgment entered on a

verdict in favor of plaintiff and from an order denying a motion for a new trial, defendant appeals.    Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BART-LETT and HATCH, JJ.

Flamen B. Candler and Edgerton L. Winthrop, for appellant.

Charles J. Patterson, for respondent.

CULLEN, J.    This action is—servant against master—to recover damages for personal injuries.    The plaintiff, a boy of 16 years, was employed to work a power press which is set in motion by pressure of the foot upon a treadle.    When the pressure is removed, the punch should come to rest.    After working some two weeks in the factory, part of his thumb was cut off by the plunger or punch.    The plaintiff's claim was that the press was out of order, and the plunger moved without pressure being applied to the treadle.    The defendant's claim was that the press was nowise defective, but that the plaintiff carelessly let his foot fall on the treadle.    Testimony was given to support the claims of the respective parties, both as to the facts of the accident, and also, of an expert nature, as to the operation of such machines.    At the close of the case the defendant moved to dismiss the complaint, both on the contributory negligence of the plaintiff, and a failure to establish negligence on the part of the defendant.    The exception to the refusal of the court to grant this motion, and the claim of the defendant that the verdict was against the evidence, present the only questions necessary to discuss on this appeal.

It is charged that the plaintiff was negligent in two respects. The first is that he placed his thumb under the plunger, while he was instructed to take the disk between his finger and thumb when placing it on the die, by which only the soft parts of the fingers would be exposed.    Plaintiff denies this instruction, and claims that his thumb was necessarily exposed.    The jury saw the press operated at the trial and could determine whether its proper operation placed the thumb of the plaintiff in danger.    The second claim is that the plaintiff knew of the defective character of the press, and, with that knowledge, continued to work on it.    We think that this was not conclusively established, but was a question for the jury to determine.    Doubtless, the plaintiff knew the press had been defective, but, according to his testimony, on his complaint the press was repaired by the machinist whose duty it was to care for and repair the machines.    Plaintiff was then told to go to work, and worked on the press for about an hour before the accident occurred. By his statement, during all this period, the press continued to click.    To charge him with negligence, it was not only necessary to show that he knew of the clicking, but also that he knew that the clicking imported that the machine was dangerous.    Not only does plaintiff swear that he did not know this fact, but it was a question most seriously litigated at the trial, the defendant's witnesses swearing that the clicking of the press did not indicate that it was defective or out of order.

As to the defendant's negligence, it is undisputed that, if the plunger moved without pressure on the treadle, the press was defective. It was alleged that, though this was the case, the defendant had no knowledge of the fact. It was not necessary that the defendant should personally have such knowledge. The repair of the press was not a mere detail of the work, as in Webber v. Piper, 109 N. Y. 496, 17 N. E. 216, but a part of the master's duty to use reasonable care to provide safe appliances for his servants. This duty was committed to the machinist, but, being the master's duty, the machinist, in the discharge of it, was not a coservant, but represented the master. For his neglect the master was liable. Fuller v. Jewett, 80 N. Y. 46; Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407. The present case cannot be distinguished from those of Hayes v. Manufacturing Co., 41 Hun, 407; Van Sickel v. Ilsley, 75 Hun, 537, 27 N. Y. Supp. 1113.

The court, hearing a constant repetition of the tale, in cases of accidents occurring in the use of these presses, that the press clicked, and then the punch came down without action by the operator, may be suspicious of the truth of some of these narratives. The question, however, is one of fact, for the jury, and the court is not justified in interfering, unless the verdict is manifestly against the evidence. Of course, the court will allow no verdict to stand that was based on the negation of a well-known and accepted scientific fact of common knowledge, or on the existence of a physical impossibility. But the operation of these presses is not a matter of common knowledge, and, if the movement of the plunger without pressure on the treadle is an impossibility, it was incumbent upon the defendant to establish it. The defendant did not satisfy the jury of the fact, nor has he satisfied us.

The judgment and order appealed from should be affirmed, with costs.

BROWN, P. J., and BARTLETT, J., concur.

HATCH, J. (dissenting). The theory upon which the action was brought is that defendant was guilty of negligence in placing plaintiff at work upon a defective, dangerous, and unsafe machine, without knowledge upon his part of the defect, or means of discovering it, in consequence of which, and without fault on his part, he was injured. The testimony adduced upon the trial tended to support the theory, and the question now is, was it sufficient for that purpose? It may be conceded now that the jury were warranted, upon the evidence, in finding defendant guilty of negligence. That plaintiff was free from negligence contributing to the injury is not so clear. The testimony of plaintiff is far from satisfactory. It is alleged in the complaint that he was an infant less than 14 years of age. It was conceded upon the trial that he was past 16 when he entered defendant's employ; and he testified that he told Mr. Kelting, defendant's foreman, that he was 17 years old then. He also testified that he told Mr. Kelting that he understood about a press, and was a press hand. But in his testimony he says that

he never worked on press work before he went into defendant's employ. There are several other discrepancies in his testimony, not necessary here to point out. They are, however, entitled to weight in construing his statements, in view of the fact that it is upon his evidence that the verdict must stand, if at all. It must be assumed that he was possessed of a sufficient measure of understanding, and subject to the same responsibilities as an adult person. Tucker v. Railroad Co., 124 N. Y. 309, 26 N. E. 916.

Plaintiff, when he entered defendant's employ, was required to oil a press, for the purpose of testing his familiarity with it. This he satisfactorily performed, and was then set at work upon one. Upon this press and another he worked six or eight days, when he was placed at work on the press where he received the injury. The motive power of all the presses was steam, and they were all operated by means of a treadle pressed downward with the foot. The press upon which the injury occurred is known as a "No. 18 Bliss Adjustable Power Press," and was used in defendant's factory for making tin safety caps for oil cans. The machine worked with a punch or plunger. There was a large fly or driving wheel on the right of the machine, connected with a shaft by a belt. Inside the hub of this wheel there passed an axle, and the driving wheel revolved around without moving it. The treadle was connected with a small latch, and when pressure was put upon it the latch was drawn away from a spring connected with the axle, and immediately four sections in the part of the axle inside the driving wheel became loosened, and dropped into a countersunk hole in the inside of the hub of the driving wheel, into which the sections fit, locking the wheel to the axle, and communicating motion to the plunger. These movable sections are called "clutch bolts," and, as they wear, they protrude from the surface of the axle, the extent of the protrusion depending upon the extent of the wear. This protrusion of the clutch brings it in contact with the edge of the countersunk hole, and produces a clicking noise as the wheel revolves. It is claimed that the clicking indicates that the machine is wearing and is defective. A cut of the machine accompanies the record, and conveys more vivid knowledge of the machine's character. This description is sufficient for our present purpose. In the performance of his work, plaintiff was required to place the cap upon top of a stationary die underneath the plunger, press his foot upon the treadle, which caused the plunger to descend, coming in contact with the cap upon the die, and pressing the pieces of tin together. The plunger was hollow for a space, and, when down, inclosed the die to its shoulder. Plaintiff testifies that, when he was set at work on this machine, he was instructed by the foreman to so place the caps that his fingers would come directly between the plunger and the die, and that he knew no other way of doing it. This was denied by defendant, who claimed that he was instructed to place the caps on with his thumb and finger, in such manner as not to bring any part of his hand between the die and the plunger. It is clearly apparent that whatever the instruction, or with none, the caps could be easily placed in position in such manner as not to bring

any portion of the hand between the plunger and the die.    And
it is equally clear, with or without instruction, that, if the hand.
were placed upon the die when the plunger descended, its effect.
would be to crush the hand.    That injury would result from such act
is as clear as placing the hand between moving rollers, or on a run-
ning saw.    Plaintiff testifies: That he was set at work on the machine
on Thursday.    That he noticed a clicking sound continually dur-
ing that day.    On Friday the machine clicked, and the plunger came
down two or three times without his foot being on the treadle, or
his doing anything to set it in motion.    He then applied to the fore-
man, stating that he was afraid of that press,—afraid of losing his
finger.    "He asked me what was the matter with it, and I brought him
over and showed it to him.    I told him the punch was going up and
down without my foot on the treadle."    The foreman said he
would fix it, hammered about it, and directed plaintiff to oil it up,
which he did.    When started, it clicked the same as ever.    Plain-
tiff says, in this connection:    "I didn't know the clicking meant
any harm.    It was never explained to me."    On Saturday, in the
morning, the punch came down five or six times, but plaintiff said
nothing.    In the afternoon, after it had come down, he again ap-
plied to the foreman, and told him "that I was afraid of it; that it
was going up and down—the punch was going up and down—
without my foot; without pressure on the treadle.    The foreman
worked on it five or ten minutes, and, at the end of that time, told
me it was all right,—to go on and work on it.    The clicking still
kept up.    It came down, and took my finger off.    It had not come
down in the meantime, after he had worked at it, until it crushed my
finger."    On his cross-examination he testified that he had seen the
punch go up and down five or six times without his foot on the
treadle, before he went to Kelting.    Then he went to him and said,
"The machine is clicking, and the punch goes up and down without
my foot on the treadle, and I am afraid I will lose my finger."
And again he says, after he hammered it:    "I saw the punch con-
tinue to go up and down, without my foot on the treadle, five or
six times, and still clicked as bad.    *    *    *    On Saturday I worked,
and still saw it come up and down,—heard it clicking, and the punch
coming up and down without my foot being on the treadle,—and I
continued to work on it.    Q. You knew it might take your thumb off?
A. Yes—    No; I did not know whether it would or not.    I was
afraid it would, but I did not know it would."    Upon this testimony,
the claim of the plaintiff is that he had the assurance of Kelting
that the machine was all right, and had the right to rely thereon,—
that he could go on in safety; that he had no knowledge that the
clicking was indicative of danger; and that he had been instructed,
when putting on the caps, to place his hand between the die and
the punch.    I do not think this claim can be sustained.    As we
have seen, his age was no shelter from obligation.    Nor do I think
that his statement that the clicking conveyed no warning to him
can be accepted, when taken in connection with his whole testi-
mony.    When he first speaks of the machine, he notes the clicking,
which was not present in the other machines he had worked on, and

which were operated in practically the same manner. He knew from the first that the clicking preceded the fall of the punch. His statement to Kelting was, "The machine is clicking, and the punch goes up and down." Here he clearly associates the clicking with the fall. He had had $2\frac{1}{2}$ days' experience with it. His attention was specifically called to the fact that the downfall of the punch followed the click of the machine. He was early apprised of the danger he had encountered, and understood it, for he said so. At no time does he disassociate the clicking with the action of the punch, except when he says that he did not know what the clicking meant. It is not clear from that statement that he referred to the occasion of the clicking after Friday forenoon. It might well be that he had no notice of what the clicking indicated prior to the automatic falling of the punch. But, when the clicking was followed so continuously by the falling, it necessarily indicated that there was some connection between the two; and prior to his injury on Saturday he does not say that at that time he did not know what the clicking indicated. It is evident that this view was shared by the learned trial judge, for upon the motion for a nonsuit he seems to have denied it upon the ground that there was no evidence that the machine clicked after Kelting last hammered at it before the injury. In this the learned judge was clearly in error, for plaintiff's testimony is that it commenced clicking as soon as the wheel started. This error, however, was not corrected by counsel. It is important here as showing that upon the trial it was assumed by the court that the clicking was notice of the defect, and that plaintiff, at the time of which the court was speaking, so understood it. Upon the testimony, I think plaintiff was chargeable with notice that the clicking indicated the defect, and what was likely to happen therefrom. If this assumption be true, then, as he voluntarily continued at work upon the machine, he must be held to have assumed the risk of its operation. Crown v. Orr, 140 N. Y. 450, 35 N. E. 648. Nor do I think that the assurance by Kelting changes this rule. He had fixed the machine on Friday, but the clicking continued, and the punch came down. When he again hammered it, on Saturday, its operation was the same as before. The clicking followed the revolutions of the wheel. Under the same conditions, he knew how it had operated before,—that it meant danger,—in consequence of which the assurance was contradicted by the warning of the machine. But, aside from this, I think he was guilty of negligence which contributed to the injury. The illustration with the punch and die, given upon the oral argument of the case, showed that it was an entirely unnecessary act to place any part of the hand between the punch and the die. It was apparent that the small piece of tin could be held between the thumb and finger, and placed upon the die, and that part of the hand necessary to the operation, as well as the whole hand, would then be unaffected by the descent of the punch, or, at the most, could only slightly injure it in the fleshy part. If the punch had never fallen without human agency, the placing of the hand between the punch and the die before placing the foot on the treadle

could not be said to be negligence, as matter of law.    But when it is coupled, as it is here, with knowledge of the fact that the punch was likely to come down at any time without human agency, then the act of bringing the hand into such a position, I think, was a negligent act; for, as has been observed, the danger was so apparent that no amount of instruction could make it more vivid and plain, and we are not left in doubt of plaintiff's mental condition, for he says he was afraid of it.    Nothing in Van Sickel v. Ilsley, 75 Hun, 537, 27 N. Y. Supp. 1113, conflicts with this view. It does not appear, from the report of that case, that plaintiff had any notice whatever that the machine was defective.    In view of the very serious conflict of the evidence as to the cause of this accident, and the conviction that plaintiff was chargeable with notice of the defect, assuming it existed, I think the judgment appealed from should be reversed, and a new trial ordered; costs to abide the event.

PRATT, J., concurs.