## SALOWICH v. NATIONAL LEAD CO.

(Supreme Court, Appellate Division, Second Department. September 23, 1913.)

1. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—PROXIMATE CAUSE OF INJURY—UNGUARDED MACHINE.

Where a servant was instructed not to oil certain cogwheels unless they were at rest, the master is not liable, on account of failure to guard the wheels, for injuries received by the servant while oiling the wheels when in motion, even though the guards were necessary to protect workmen at a mixer just below the cogwheels.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

2. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—PROXIMATE CAUSE OF INJURY—UNGUARDED MACHINE.

Where a servant was injured by unguarded cogwheels, which were put in motion unintentionally while he was oiling them, the failure to guard the wheels was the proximate cause of the accident, if there was reason to believe that there was danger of their starting, either without or through the negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

3. MASTER AND SERVANT (§ 139*)—INJURIES TO SERVANT—PROXIMATE CAUSE.—NEGLIGENCE OF MASTER.

In such a case, the negligence of the master, if any, which caused the starting of the wheels, might be a concurring proximate cause, and the master would be liable on both grounds.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 275, 282, 289, 296; Dec. Dig. § 139.*]

4. MASTER AND SERVANT (§ 125*)—INJURIES TO SERVANT—KNOWLEDGE OF DEFECT.

In an action for injuries to an employé, caused by the unintentional starting of cogwheels which he was oiling, the fact that the belt had shifted on another occasion about a week before and started the wheels, and that the foreman knew of that fact, is sufficient evidence of negligence on the part of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

5. TRIAL (§ 253*) — INJURIES TO SERVANT — INSTRUCTIONS — THEORY OF DEFENSE.

Where a servant was injured by an unguarded cogwheel, which he was oiling, and there was a conflict in the evidence whether he was oiling them, contrary to orders, while they were in motion, or whether they started while he was oiling them, it was reversible error to refuse to charge that the plaintiff could not recover if he started to oil the wheels while they were in motion, even though the charge of the court involved that proposition, since defendant was entitled to have it brought sharply to the attention of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

6. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.

Under the express provisions of Employers' Liability Act (Consol. Laws 1909, c. 31) § 202a, as added by Laws 1910, c. 352, the burden of proving contributory negligence of a servant is upon the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Hohn Salowich against the National Lead Company. Judgment for the plaintiff, and defendant appeals. Reversed and remanded.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

James J. Mahoney, of New York City (George J. Stacy, of New York City, on the brief), for appellant.

Martin T. Manton, of New York City (William H. Griffin, of New York City, on the brief), for respondent.

THOMAS, J.  The primary question is whether there was error in the charge to the jury.  The plaintiff's arm was carried into unguarded cogwheels, which he was oiling and which were 1 foot and 7 inches above a tank 8 feet and 2 inches high.  It was the conceded duty of the plaintiff to oil the wheels when the shaft was at rest.  He states that he ascended the ladder placed against the tank, stood on the second rung, and "was about putting that oil can into one of those holes," when the machine started.  The machine could start only from the belt passing from the loose to the tight pulley, and, as plaintiff testified, it made the change in this instance without interference by anybody.  In his experience of ten years in that service, it had happened only about a week before the accident, which he reported to the foreman, as well as the absence of guards, and the latter replied that he would report it to the chief engineer, who would fix it.  The plaintiff added that he also reported a loose screw related to the belt shifter.  The foreman denied that there was any conversation on the subject.  The screw had no effect upon the starting of the machinery, and may be disregarded here, as it should have been upon the trial.  The tank was used for mixing water, acid, and lead, and the machinery was started in usual practice after the introduction of the lead began.  The plaintiff states that there was no lead in the tank at the time the machinery started, and so in usual course should not have been in motion.  But the foreman said, with doubtful credence, that there was lead in it and that it was in motion.  The statement of the plaintiff, that it was not, was supported by a fellow workman called by the defendant.

[1] Several times each day the plaintiff, or some other of several persons, was required to go up the ladder and use a stick in the tank to test the composition, and for that purpose raise the stick up and down, whereby his hand came near to the cogwheel, an inch or two therefrom, as plaintiff states.  So the jury would have been justified in finding that the cogwheels were not properly guarded to protect workmen testing the mixture in the tank.  But no guard was necessary to protect one oiling the wheels, as no one was permitted to do so when they were in motion, and if plaintiff attempted to oil the moving parts he was guilty of disobedience of the practice and brought about his own injury.

[2] But it is necessary to go a step further.  What if the machine self-started while plaintiff was oiling it?  Then was defendant liable for leaving it unguarded?  Yes; if it could be properly found that

there was reason for believing that it might start either without or through the master's negligence as to the shifting of the belt. But in ten years it had started but once, and defendant's foreman was found to have had notice of it a week before. If this be true, what should the defendant have done? Corrected the self-shifting, or guarded the cogs, or both; and if he neglected either was he liable to plaintiff? If the jury was justified under the evidence in finding that with or with-out the defendant's fault there was practical, and in the use of due care recognizable, danger of the wheels beginning to move while the plaintiff was oiling them, and so injuring him, it was justified in hold-ing that defendant had disobeyed the statute. As regards this case, the question is whether the machine did start a week earlier or on this occasion. The jury credited plaintiff's statement that it did. Hence the case is one that may fall under the statute, and the failure to guard becomes a proximate cause of the accident. The court properly refused a request that it could not be so found. If the belt was liable to shift, the cogwheels were liable to go, and to hurt the workmen, and in such case the guards were demanded.

[3] But could the master's negligence as to the shifting belt be a concurring proximate cause? If the master's neglect permitted the self-starting, whereby the cogwheels were actuated, such neglect was a proximate cause. So the cause of action could rest on the unguarded cogwheels, or the master's neglect, or both. But the learned court in its main charge submitted the case upon the defendant's negligence; that is, whether the—

"cogs were not properly guarded and brought about the accident by reason of some defect, of which notice was given to the man who was standing for the master, and which started this machinery while it was at rest, and while the plaintiff was performing the work which he was required to do in the ordinary course of his employment."

It is true that reference had been made to the omission to guard the wheels; but the final question was the master's negligence, and would have so remained, had not the defendant's counsel requested a charge that the uncovered cogs were not the proximate cause of the ac-cident. This was refused. It might have been in harmony with the cause of action submitted to have so charged, but it would have been error as to the plaintiff, for, as already indicated, the plaintiff was en-titled to have the question of the failure to guard, as well as that of the neglect in regard to the belt, submitted to the jury if the evidence justified it.

[4] But did the evidence tend to show any neglect as to the belt, beyond the fact that it changed on this and the earlier occasion? The court refused to charge that the self-starting did not indicate any de-fect, but did later charge that plaintiff must show what caused the belt to shift and that the cause was a negligent one. No specific cause was shown, as the loose screw was not the cause. But could the jury credit the story that the belt shifted, and that it had done so before, and that the master through the foreman had notice of it? If so, the fact was sufficient evidence of negligence, within Fox v. Le Comte, 2 App. Div. 61, 37 N. Y. Supp. 316, affirmed on opinion below 153 N. Y. 680, 48

N. E. 1104, McCarragher v. Rogers, 120 N. Y. 526, 24 N. E. 812, and Staskowski v. Standard Oil Co., 127 App. Div. 17, 111 N. Y. Supp. 58. In Dingley v. Star Knitting Co., 134 N. Y. 552, 32 N. E. 35, the court indicated that the starting of the machine on the occasion of the accident and in an earlier instance was attributable to a cause other than a defect.

[5] The defendant made a series of requests to the general purpose that the plaintiff could not recover if he went up to oil it when the machinery was in motion. The plaintiff criticises the requests, in that they do not relate to the time when the plaintiff began to oil the machinery. The plaintiff states that the machinery was at rest when he went up the ladder, and started when he began to oil the cogs. The requests covered the undertaking, and could not be misunderstood. The charge should have been made. It is true that the charge of the court involved the thought in the request, but the defendant was entitled to have it brought sharply to the attention of the jury. It is also charged as error that the court submitted the question of the negligence of the superintendent, but I infer that the intention was to submit the question of Gossl's position for the purpose of determining whether he was the proper person to receive notice of the self-starting of the machinery. To that extent, at least, the question was involved.

[6] There are various other exceptions urged, but the only one that needs attention relates to the burden of proof as regards contributory negligence. But the defendant does not indicate why it does not bear it under section 202a of the Employers' Liability Act (Consol. Laws 1909, c. 31), as added by Laws 1910, c. 352.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.